**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | | |
|---|---|---|
| AMERICAN CITY BUSINESS JOURNALS, INC., | ) ) | |
| | ) | **Case No.** |
| Plaintiff, | ) ) | |
| vs. | ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| THAT'S GREAT NEWS, LLC and ROBERT R. ROSCOE, | ) ) | |
| | ) | |
| Defendants. | ) | |

_____

**COMPLAINT AND DEMAND FOR JURY TRIAL**
_____

Plaintiff American City Business Journals, Inc. ("**ACBJ**" or "**Plaintiff**"), through its undersigned counsel, hereby brings this Complaint and Demand for Jury Trial against Defendants That's Great News, LLC and Robert R. Roscoe (collectively, "**Defendants**"), and alleges as follows:

## I.     THE PARTIES

1.     Plaintiff ACBJ is a corporation incorporated and existing under the laws of the State of Delaware, with its principal address located at 120 West Morehead Street, Suite 400, Charlotte, North Carolina 28202-1874. ACBJ is registered to do business in the State of Florida.

2.     Upon information and belief, Defendant That's Great News, LLC ("**TGN**") is a limited liability company organized and existing under the laws of the State of Florida, with its principal place of business at 12985 North Telecom Parkway, Temple Terrace, Florida 33637.

3.     Upon information and belief, Defendant Robert R. Roscoe ("**Roscoe**") is a resident of the State of Connecticut.

4.     According to the records of the Division of Corporations for the State of Florida, Roscoe is TGN's authorized member, manager, and registered agent, and maintains TGN's registered agent address at 12985 North Telecom Parkway, Temple Terrace, Florida 33637.

## II.     NATURE OF ACTION

5.     This is an action for trademark infringement, unfair competition, false association and designation of origin, false advertising, and dilution under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051, *et seq*. (the "Lanham Act"); trademark infringement, dilution, deceptive trade and unfair practices, unfair competition; violations of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202; and breach of contract.

## III.     JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 as it involves a federal question; under 15 U.S.C. § 1121 and 28

U.S.C. § 1338(a) in that this case arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.* and DMCA, 17 U.S.C. § 1202 *et seq.*; and under 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000 and is between citizens of different states.

7.     This Court also has subject matter jurisdiction over the unfair competition claims herein under the provisions of 28 U.S.C. § 1338(b) in that said claims are joined with a substantial and related claim under the Lanham Act, 15 U.S.C. § 1051 *et seq.*

8.     This Court has supplemental jurisdiction over the claims that arise under Florida law pursuant to 28 U.S.C. § 1367(a) because they are substantially related to the claims that arise under the Lanham Act.  Furthermore, this Court has supplemental jurisdiction because both the state and Lanham Act claims are derived from a common nucleus of operative facts and considerations of judicial economy dictate the state and federal issues be consolidated for a single trial.

9.     This Court has personal jurisdiction over Defendants because Defendants purposefully directed their activities at residents of Florida, and the litigation at issue results from injuries to ACBJ that arise from or relate to those activities.

10.     Upon information and belief, this Court has personal jurisdiction over Defendants based on their continuous and systematic minimum contacts with residents of Florida, through the distribution and sale of their goods and/or services

in Florida, because Defendants regularly transact business in this District, and/or have offered goods or services in interstate commerce through one or more interactive websites, and have caused injury in this District.

11. Upon information and belief, this Court further has general personal jurisdiction over TGN because it is a Florida limited liability company with its principal place of business located in this District, and therefore is a resident of the State of Florida.

12. Upon information and belief, this Court has specific personal jurisdiction over Defendants under Florida's long-arm statute, Fla. Stat. § 48.193, because (1) Defendants were or are operating, conducting, engaging in, or carrying on a business or business venture in Florida and/or maintained their principal business offices in Florida; (2) the tortious acts or omissions occurred in Florida; (3) the damages occurred in Florida; and (4) jurisdiction based on Defendants' contacts with Florida is not inconsistent with the Constitution of the State of Florida or the Constitution of the United States.

13. Venue properly lies in this Division under Middle District of Florida Local Rule 1.04, because Hillsborough County has the greatest nexus with this cause. TGN's principal place of business is in, and the cause of action arose, in Hillsborough County.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because TGN resides in and maintains its principal place of business within this District, because a substantial part of the events giving rise to the claims occurred in this District, and because Defendants are subject to this Court's personal jurisdiction.

## IV.   FACTS

**A.     ACBJ's Publications and Associated Intellectual Property Rights**

5.     ACBJ is a multi-platform media company providing in-depth coverage of local business communities and breaking news.

6.     Through print, digital products and face-to-face events, ACBJ offers business leaders many avenues for making connections and gives them a competitive edge locally, regionally and nationally.

7.     ACBJ is the premier media solutions platform for companies that target business decision-makers.

8.     ACBJ is the largest publisher of metropolitan business newsweeklies in the United States.

9.     Under ACBJ's The Business Journals division, ACBJ publishes 45 business publications across the country reaching more than 3.6 million readers each week, including four publications in the State of Florida alone.

10.     Among other publications, the ACBJ's The Business Journal division publishes:

5

- Tampa Bay Business Journal;

- Jacksonville Business Journal;

- Orlando Business Journal;

- South Florida Business Journal;

- Albany Business Review;

- Albuquerque Business First;

- Atlanta Business Chronicle;

- Austin Business Journal;

- Baltimore Business Journal;

- Bellingham Business Journal;

- Birmingham Business Journal;

- Boston Business Journal;

- Buffalo Business First;

- Charlotte Business Journal;

- Chicago Business Journal;

- Cincinnati Business Courier;

- Cleveland Business Journal;

- Columbus Business First;

- Dallas Business Journal;

- Dayton Business Journal;

- Denver Business Journal;

- Hartford Business Journal;

- Houston Business Journal;

- Kansas City Business Journal;

- L.A. Biz;

- Louisville Business First;

6

- Memphis Business Journal;
- Milwaukee Business Journal;
- Minneapolis/St. Paul Business Journal;
- Nashville Business Journal;
- Pacific Business News;
- Philadelphia Business Journal;
- Phoenix Business Journal;
- Pittsburgh Business Times;
- Portland Business Journal;
- Puget Sound Business Journal;
- Sacramento Business Journal;
- St. Louis Business Journal;
- San Antonio Business Journal;
- San Francisco Business Journal;
- Silicon Valley / San Jose Business Journal;
- Triad Business Journal;
- Triangle Business Journal;
- Washington Business Journal; and
- Wichita Business Journal.

A list of ACBJ's publications (collectively with the above list, the "**ACBJ Titles**")

is attached hereto as **Exhibit 1**.

11. ACBJ owns and operates corresponding websites for the ACBJ Titles,

located at the domain <www.bizjournals.com> (the "**Website**").

12.   The ACBJ Titles and Website cover the subject matter of local business communities and breaking news.

13.   ACBJ owns, is the author of, and is responsible for the creation, development, and production of the content of each issue of the ACBJ Titles and on the Website, each of which have significant value and have been produced and created at considerable expense.

14.   In its ACBJ Titles and on the Website, ACBJ publishes annual awards lists specific to each market (collectively, the "**Business Journal Awards**"), including, without limitation:

- *40 Under 40*

- *Best of the Bar*

- *Best Places to Work*

- *Book of Lists*

- *Business Impact Awards*

- *Business of the Year*

- *CFO of the Year*

- *C-Suite Awards*

- *Diversity in Business Awards*

- *Family Business Awards*

- *Fast 50*

- *Innovation Awards*

8

- *Most Admired CEO Awards*
- *Real Estate Awards*
- *Women in Business Awards*
- *Women of Influence Awards*
- *Women Who Mean Business*

15. At all relevant times hereto, ACBJ has been and continues to be the owner of the copyrights in the content of the ACBJ Titles and on the Website.

16. Each print issue of ACBJ's ACBJ Titles contains a copyright notice to inform the public that ACBJ is the copyright owner of the content therein.

17. Each webpage of ACBJ's Website also features the following copyright notice:

> "© 2023 American City Business Journals. All rights reserved. Use of and/or registration on any portion of this site constitutes acceptance of our User Agreement (updated January 1, 2021) and Privacy Policy and Cookie Statement (updated July 1, 2022). The material on this site may not be reproduced, distributed, transmitted, cached or otherwise used, except with the prior written permission of American City Business Journals."

Exemplary screenshots from the Website are attached hereto as **Exhibit 2**.

18. Paid subscribers to ACBJ's ACBJ Titles are entitled to receive both hard-copy print and electronic versions of ACBJ's publications.

19. The electronic versions of ACBJ's ACBJ Titles are made available only pursuant to user agreements which prohibit reproduction or dissemination of the ACBJ Titles.

9

20.    For example, the Website contains a User Agreement that expressly informs users of the Website that, among other things, they may not:

- "make any commercial, advertising, promotional, or marketing use of the Service, Products and/or Content obtained on or through the Service, except as permitted by the Copyright Act or other law or as expressly permitted in writing by the Agreement, us or the Service;"

- "copy, harvest, crawl, index, scrape, spider, mine, gather, extract, compile, obtain, aggregate, capture, or store any Content on or through the Service, including by an automated or manual process or otherwise, if we have taken steps to forbid, prohibit, or prevent you from doing so;"

- "copy, reproduce, modify, change, edit, crop, alter, revise, adapt, translate, enhance, reformat, remix, rearrange, resize, create derivative works of, move, remove, delete, or erase any copyright, trademark, or other proprietary legends, symbols, marks, or notices on the Service, or attempt to circumvent any mechanisms for preventing the unauthorized reproduction or distribution of Content or Products;"

- "copy, reproduce, modify, change, edit, crop, alter, revise, adapt, translate, enhance, reformat, remix, rearrange, resize, create derivative works of, move, remove, delete, erase, reverse engineer, decipher, decompile, disassemble, store, cache, aggregate, publish, post, display, distribute, broadcast, perform, transmit, rent, sell, share, sublicense, syndicate, or otherwise provide to others, or use any Content or Products obtained on or through the Service, in whole or in part, except as permitted by the Copyright Act or other law or as expressly permitted in writing by the Agreement, us or the Service;" or

- "copy, reproduce, modify, change, edit, crop, alter, revise, adapt, translate, enhance, reformat, remix, rearrange, resize, create derivative works of, move, remove, delete, erase, reverse engineer, decipher, decompile, disassemble, or otherwise attempt to derive any source code or underlying ideas or algorithms of the Service, in whole or in part, including without limitation any Content, Products, communications, messaging, programming, hardware, functionality, or features on our networks, servers or databases, or otherwise reduce the Service, in whole or in part, to a human perceivable form[.]"

10

A copy of the Website User Agreement is attached hereto as **Exhibit 3**.

21.   The Website User Agreement defines "Content" as "all text, articles, photographs, images, graphics, illustrations, creative, copy, artwork, video, audio, music, podcasts, ringtones, games, trademarks, trade names, service marks, and other brand identifiers, designs, plans, software, source and object code, algorithms, data, statistics, analysis, formulas, indexes, registries, repositories, and all other content, information, and materials available on or through the Service, whether posted, uploaded, transmitted, sent or otherwise made available by us, our licensors, vendors, and/or service providers, or by you, and/or other users or third parties, including any such Content uploaded manually or bookmarked by you and/or other users."

22.   The Website User Agreement defines "Product" as "any merchandise, item, product and/or service, including without limitation Content, contests and surveys, magazines and other publications that may be featured, mentioned, reviewed, described, auctioned, given away, rented, sold, distributed, or otherwise available on or through the Service, either by us or third parties."

23.   The Website User Agreement defines "Service" as "each website, mobile site, application, email/text/SMS campaign, event, and/or other activity, offering, or publication (regardless of how distributed, transmitted, published, or broadcast) provided by us that links to, or references, this document, including

11

without limitation all Content, features and functionality thereof, such as widgets, plug-ins, and embeddable players."

24.    The Website User Agreement specifically warns:

"CAUTION: ANY ATTEMPT TO DO ANY OF THE FOREGOING PROHIBITED ACTS, OR TO OTHERWISE UNDERMINE THE OPERATION OF THE SERVICE, MAY BE A VIOLATION OF CRIMINAL AND CIVIL LAW. SHOULD SUCH AN ATTEMPT BE MADE, WE RESERVE THE RIGHT, IN ADDITION TO OUR OTHER REMEDIES, TO SEEK DAMAGES (INCLUDING WITHOUT LIMITATION ATTORNEYS' FEES) FROM ANY SUCH INDIVIDUAL OR ENTITY TO THE FULLEST EXTENT PERMITTED BY LAW, INCLUDING CRIMINAL PROSECUTION."

25.    In addition to other its other goods and services, ACBJ provides a reprint service through which ACBJ sells reprints of articles or other content published in ACBJ's ACBJ Titles, as well as framed copies of the articles and plaques displaying their content.

26.    ACBJ also offers for sale commemorative plaques to the individual and business honorees featured in ACBJ's Business Journal Awards.

27.    ACBJ is the owner of common law and registered trademark rights in and to the marks AMERICAN CITY BUSINESS JOURNALS, the names and design marks of the ACBJ Titles, the names and design marks of the Business Journal Awards, and other publications, awards, and design marks, including those subject to the registrations listed in Exhibit 4 *infra* (collectively, the "**ACBJ Marks**") in the U.S. and throughout the world.

12

28. ACBJ also owns the state and federal trademark registrations for the ACBJ Marks listed in **Exhibit 4** hereto. The ACBJ Marks subject to ACBJ's federal trademark registrations shall be referred to collectively herein as the "**Registered Marks**."

29. In Florida, ACBJ owns state trademark registrations for the following ACJB Marks:

- SOUTH FLORIDA BUSINESS JOURNAL, FL reg. no. T00240, registered December 28, 1983;

- UNIQUELY US, FL reg. no. T20000000174, registered January 28, 2020;

- BEST PLACES TO WORK, FL reg. no. T21000000593, registered June 1, 2021;

- WOMEN WHO MEAN BUSINESS, FL reg. no. T07000000521, registered April 17, 2007; and

- WOMEN WHO MEAN BUSINESS, FL reg. no. T07000000522, registered April 17, 2007.

The foregoing state trademark registrations shall be referred to collectively as the "**Florida Registrations**."

30. ACBJ's aforementioned state and federal trademark registrations are valid and subsisting, and many of the Registered Marks have become incontestable.

31. ACBJ has continuously used the ACBJ Marks in connection with its various ACBJ Titles for several decades, and in some cases at least as early as May 1963.

32. As a result of ACBJ's longstanding and continuous use of the ACBJ Marks, the ACBJ Marks have acquired substantial goodwill.

33. Since its first use of the ACBJ Marks, ACBJ has spent significant resources advertising, developing, and promoting the ACBJ Marks. The ACBJ Marks have become synonymous with high quality publications covering the subject matter of local business communities, breaking news, and annual awards rankings. As a result, millions of consumers in the U.S. (including consumers in the State of Florida) and worldwide instantly associate business publications with ACBJ's distinctive and famous ACBJ Marks.

34. The ACBJ Marks have become well known in Florida, throughout the U.S., and abroad, as a symbol of ACBJ's goods and services.

35. Thus, ACBJ has established, through continuous, long-term use in commerce extensive common law trademark rights in the ACBJ Marks.

36. ACBJ has continuously used the ACBJ Marks in the United States as an identifier of ACBJ as the source and origin of high quality printed and online publications.

37. ACBJ has expended considerable time, resources, and effort in promoting the ACBJ Marks and developing substantial goodwill associated therewith throughout the United States.

38.     The ACBJ Marks are distinctive and strong when used in conjunction with ACBJ's goods and services.

39.     Due to the continual use of the ACBJ Marks by ACBJ, the ACBJ Marks have come to indicate a single source of goods and services. The ACBJ Marks further have come to indicate ACBJ as the single source of such quality goods and services.

40.     As a result of the long and exclusive use by ACBJ of its ACBJ Marks, the significant volume of sales under the ACBJ Marks, and the large amount of money expended on advertising and promotion of its goods and services, the ACBJ Marks have become, through widespread and favorable public acceptance and recognition, an exclusive asset of substantial value as a symbol of ACBJ, its quality goods and services, and its goodwill.

41.     ACBJ and its use of the ACBJ Marks are well-known and famous.

**B.     Defendants' Wanton, Knowing, and Intentional Unlawful Actions**

### 1.     Defendants' Business Practices

42.     Defendants have been and are engaged in a pattern and practice of knowingly, intentionally, and willfully infringing ACBJ's copyrights and trademarks, competing unfairly with ACBJ, engaging in deceptive trade practices, confusing consumers, breaching contracts with ACBJ, and interfering with ACBJ's business and existing and prospective business relationships.

15

43.     Without ACBJ's knowledge or consent, and beginning long after ACBJ had established extensive and valuable goodwill in connection with the ACBJ Marks, Defendants commenced to use, and are currently using, in interstate commerce and commerce affecting interstate commerce, ACBJ's ACBJ Marks (collectively, the "**Infringing Marks**") and content copied from ACBJ's ACBJ Titles and Website (collectively, the "**Infringing Content**") in connection with the sale, offering for sale, distribution, advertising, and promotion of Defendants' products and services, including without limitation, customized wall plaques for people and companies that have been featured in ACBJ's ACBJ Titles.

44.     TGN is in the business of selling reprints of articles and other content published by persons other than TGN, as well as framed copies and plaques displaying articles and other content published by persons other than TGN.

45.     Upon information and belief, Defendants subscribe to various ACBJ publications, including the ACBJ Titles, and—through such subscriptions and otherwise—access both hard copy and electronic versions of ACBJ's publications.

46.     Defendants target individuals and businesses who have been featured in one of ACBJ's publications, and seek to sell them reprints of and/or plaques displaying the ACBJ article in which the individual or business was mentioned.

47.     Consumers who have been targeted by Defendants have complained to ACBJ about the business practices and tactics employed by Defendants, mistakenly

believing that Defendants' solicitations were made by ACBJ or that Defendants' business was otherwise associated with ACBJ.

### 2.    The Prior Litigation and Settlement Agreement

48.    On June 28, 2006, ACBJ and its wholly owned subsidiary, Business Journal Publications, Inc. ("BJPI"), filed a lawsuit against TGN in the United States District Court for the Southern District of New York captioned *American City Business Journals, Inc. et al. v. That's Great News, LLC*, Case No. 1:06-cv-04990 (the "**Prior Lawsuit**").

49.    The Prior Lawsuit asserted causes of action for copyright infringement under the Copyright Act, trademark infringement, unfair competition and false advertising under the Lanham Act, and unfair competition, trademark infringement, and breach of contract under state law, arising out of Defendants' business of soliciting orders for and creating plaques featuring ACBJ's trademarks and content.

50.    ACBJ, BJPI, and TGN executed a written settlement agreement on November 6, 2006 (the "Settlement Agreement").    A true and correct copy is attached hereto as **Exhibit 5**.

51.    In exchange for ACBJ's and BJPI's voluntary dismissal of the suit, TGN signed a consent judgment and agreed, among other terms, that:

> (i)    TGN shall immediately and cease and desist from acts that infringed ACBJ's copyrights and trademarks;

17

(ii)     TGN shall not reprint or otherwise produce copies of any content appearing in ACBJ publications;

(iii)    TGN shall immediately cease and desist from advertising, promoting, or offering to provide reprints or copies of any ACBJ content;

(iv)    In connection with any plaques or other TGN products which contain or display ACBJ content, TGN shall use only actual cut-outs from an actual hard copy of the ACBJ publications;

(v)     TGN shall not use reproductions, photocopies, printouts from electronic version or any other form, and TGN shall not modify or digitally manipulate any content owned by ACBJ;

(vi)    TGN shall not produce, distribute, publish, communicate, or sell any products, promotional materials, advertising or marketing materials or pitches that could reasonably be understood to suggest that TGN is affiliated with, sponsored by, or has obtained a license or other rights from, or is any way associated with ACBJ or its publications;

(vii)   TGN will use and prominently display on all materials mentioning the name or trademark of any ACBJ publication used by TGN to solicit sales of its products a compliant disclaimer; and

(viii)  TGN shall submit in writing for ACBJ's approval the form of any advertising, marketing, or promotional material in which any ACBJ trademark or the name of any ACBJ publication is or will be mentioned, and will not utilize any other forms mentioning ACBJ publications or trademarks unless TGN has received prior approval from ACBJ, which shall not be unreasonably withheld.

*See* Exhibit 5.

52.    The Settlement Agreement also provides that if, in any action to enforce the Settlement Agreement, the Court finds that a material breach has been committed, the breaching party shall pay the costs and expenses incurred in

18

connection with the action by the non-breaching party, including reasonable attorney's fees. *See* Exhibit 5.

53. ACBJ, in accordance with the Settlement Agreement, filed a Consent Judgment to dismiss the Prior Lawsuit on December 4, 2006.

### 3. Defendants' Continuing and Willful Infringing Conduct

54. Since executing the Settlement Agreement, TGN continued to engage in infringing, unfair, or prohibited conduct using ACBJ Marks and ACBJ content.

55. For instance, TGN continued to modify and/or digitally manipulate content owned by ACBJ in connection with advertising, promoting, and selling plaques to people featured in ACBJ publications.

56. TGN continued to contact people featured in a ACBJ publication to offer unsolicited "free previews" of Defendants' products and services, using language that could reasonably be construed as demanding payment for those products and services that the recipient did not previously agree to pay for or receive.

57. TGN also continued to contact people featured in a ACBJ publication to offer them unsolicited products or "free previews" of plaques, then demand that the recipient to return those products that the recipient did not previously agree to pay for or request.

58. In creating its products and services, TGN continued to use type-styles, logos, or fonts that are the same or substantially the same as those used in ACBJ's

19

publications. TGN also failed to display the phrase "As Published In" preceding and immediately adjacent to the name of ACBJ's publications, or in the same type face, font, color shade, size, and prominence as used for the name of ACBJ's publication.

59. In so doing, TGN continued to infringe the ACBJ Marks and copyrights owned by ACBJ in violation of the Settlement Agreement.

60. Consumers in receipt of Defendants' communications and products using the Infringing Marks and Infringing Content have continued to complain to ACBJ regarding Defendants' business practices and tactics, and mistakenly believe that Defendants' solicitations were made by ACBJ or that Defendants' business was otherwise associated with ACBJ.

61. For example, a consumer in Jacksonville, Florida contacted ACBJ after mistakenly purchasing one of Defendants' products, believing that Defendants were affiliated with ACBJ.

62. The consumer inadvertently purchased two plaques, confused because that Defendants used the ACBJ Marks and logos, contacted the consumer using the same process that ACBJ used, and stating that Defendants' tactics were "super confusing."

63. ACBJ provided written notice of TGN's various material breaches on at least November 5, 2018, March 12, 2019, and February 14, 2020.

64.    TGN did not cure its breaches within fifteen (15) days of receipt of ACBJ's notices.

65.    ACBJ provided written notice of termination of the Settlement Agreement on October 13, 2022.

### 4.    Defendants' Continued and Willful Infringement of ACBJ's Copyrights and ACBJ Marks

66.    Despite ACBJ's express notice of termination of the Settlement Agreement, and ACBJ's multiple and express notices that ACBJ objected to and did not authorize Defendants' use of the Infringing Marks and Infringing Content in connection with Defendants' goods and services, Defendants have continued to use the ACBJ Marks and content owned by ACBJ to market Defendants' products.

67.    For example, on information and belief, in or around November 2022, Defendants disseminated a digital image of a "sample" plaque using the ACBJ Marks and ACBJ's content taken from one of ACBJ's ACBJ Titles.  A true and correct copy of the sample is attached hereto as **Exhibit 6** and excerpted below.



Wood

68.     As further example, on information and belief, on December 16, 2022, TGN emailed a person featured in an ACBJ Business Journal and invited him to contact TGN for "a free plaque design" showing that recipient's article mounted on a plaque. A true and correct copy of the December 16, 2022 email is attached hereto as **Exhibit 7**.

69.     In that communication, TGN states that TGN will "get my graphic designer started" and "can have the digital image of your plaque design, showing your press article, emailed to you within 48 hours."

22

70. In so doing, Defendants admit that they have reproduced, modified, digitally manipulated, and used, and continued to reproduce, modify, digitally manipulate, and use, electronic versions of content owned by ACBJ to create Defendants' infringing products.

71. In the signature block of that communication, TGN falsely states that they are the "Official partner of Milwaukee Business Journal," which is one of ACBJ's ACBJ Titles.

72. Defendants' December 16, 2022 communication does not contain any disclaimer of affiliation with ACBJ.

73. Defendants also operate and transact business through their interactive website www.thatsgreatnews.com (the "TGN Website"), through which Defendants accept and process orders of their products from any person in any city in the United States, including residents of this District. Exemplary photographs of the TGN Website are attached hereto as **Exhibit 8**.

74. According to the TGN Website, Defendants "create your plaque from any print or online article" and "can also create designs with any content that you send to us."

75. The TGN Website further states: "Old articles are no problem either, because we have an extensive publication archive we can usually source the original of any out of print article."

76.    The TGN Website invites users to "Request Your Free Plaque Preview," stating that "[y]ou'll get an email in 48 to 72 hours with your plaque preview picture."

77.    The TGN Website also invites users to "[c]heck our database of 3 million news articles to see if we've already created your plaque[.]"

78.    The TGN Website reveals that Defendants have created and marketed several digital representations of "sample" plaques using the ACBJ Marks and/or content owned by ACBJ, with exemplary images attached as **Exhibit 9** and excerpted below.





Wood



HD Metal Black



Lucinda Premium

*Approximate Size: 12x20*

79.    Defendants are aware that their business practices are infringing, fraudulent, and unfair.

80.    On information and belief, in addition to ACBJ's Prior Lawsuit, TGN has been a party to more than ten lawsuits filed by publications, media companies, and other rights holders asserting claims of copyright infringement, trademark

infringement, and unfair competition related to Defendants' plaque business. Defendant Roscoe was named as a co-defendant in at least eight of those lawsuits.

81.    There are also several online articles and posts regarding Defendants' business practices, including, for example:

- Chuck Bennett, *SCAM ALERT – Sometimes great news is just a scam*, Boundary Creek Times, Oct.17, 2013 (writing that "[a] U.S. company is looking to take advantage of unsuspecting people in the Kootenay-Boundary" and noting that "TGN and their tactics are legendary throughout North America");

- Stephen Fay, *Connecticut company tries to hawk Islander feature stories*, MOUNT DESERT ISLANDER, Feb. 14, 2018 ("Though it has been sued for copyright infringement, That's Great News continues to poach news stories and personality profiles" and noting that the publication sent a cease and desist letter to Roscoe); and

- *Company Selling Plaques Not Associated With Missourian*, THE MISSOURIAN, Jul. 27, 2019 (noting that "[t]he company's sales pitch uses the The Missourian's name, leading some to believe the paper is selling the products.").

82.    According to the Better Business Bureau ("BBB") website, at least 55 complaints were submitted about TGN to the BBB in the last three years. *See* **Exhibit 10**. Roscoe personally responded to several of the BBB complaints.

83.    On information and belief, in his role as CEO of TGN, Roscoe was and is actively and personally involved in the wrongful acts giving rise to this action.

84.    On information and belief, Roscoe was and is a moving, active, conscious force behind Defendants' infringement of the ACBJ Marks and content

26

owned by ACBJ, false representations and advertising, and other unfair or unlawful acts complained of herein.

85.    On information and belief, Roscoe personally took part in, ratified, and/or directed others to engage in the infringing or wrongful activity. As a result, Roscoe is personally liable for the wrongful acts he has committed as alleged herein.

86.    On information and belief, Roscoe knowingly, personally, and actively participated in, authorized, directed, ordered, controlled, participated, approved, ratified, or agreed-upon TGN's infringing or wrongful activity.

87.    As CEO of TGN, Roscoe has a direct financial interest in TGN, and the right and ability to supervise TGN's activities, including the wrongful acts and for the improper purposes alleged herein.

88.    On information and belief, as CEO of TGN, Roscoe and TGN have an apparent or actual partnership, have authority to bind one another in transactions with third parties, and/or exercise joint ownership or control over Defendants' infringing products.

### 5.    Harm to ACBJ

89.    The natural, probable, and foreseeable result of Defendants' conduct has been, and will continue to be, to deprive ACBJ of the benefits of selling the right to reprint, distributor, make derivative works, or otherwise exploit its copyrighted content and the ACBJ Marks; to irreparably harm ACBJ's business and goodwill; to

injure ACBJ's reputation and relations with consumers and potential consumers; and to otherwise inflict harm on ACBJ.

90. Upon information and belief, Defendants selected the Infringing Marks and Infringing Content solely because of the fame and reputation built up in the ACBJ Marks by ACBJ over many years and at great expense, and Defendants' sole intention in selecting the Infringing Marks and Infringing Content was to trade on the goodwill of ACBJ.

91. The Infringing Marks are identical to the ACBJ Marks.

92. Defendants use the Infringing Marks in connection with marketing and providing their goods and services to citizens of Florida and other states, and it advertises their goods and services to citizens of Florida and other states via the Internet and email solicitations.

93. Through their use of the Infringing Marks and Infringing Content, including, but not limited to, in email communications and on the TGN Website, Defendants seek to unfairly trade off the valuable goodwill and reputation built by ACBJ in its ACBJ Marks.

94. Defendants are using the Infringing Marks in U.S. commerce in connection with selling commemorative plaques bearing the ACBJ Marks and content owned by ACBJ. These services are closely related and identical to the goods and services offered by ACBJ under its ACBJ Marks.

95.    Defendants are using the ACBJ Marks without ACBJ's authorization.

96.    Defendants' use of the Infringing Marks is specifically designed to create an association or suggestion of affiliation between Defendants and ACBJ.

97.    Defendants' use of the ACBJ Marks intentionally seeks to unfairly capitalize on the fame, reputation, and goodwill created by ACBJ and its ACBJ Marks.

98.    Furthermore, Defendants' activities have a substantial effect upon ACBJ's interstate usage of its mark, good will, and sales. The continued, unauthorized use of the Infringing Marks by Defendants would subject the good will and reputation of ACBJ to the hazards of Defendants' business.

99.    Defendants' classes of customers not only overlap with ACBJ's classes of customers—consumers that are featured in ACBJ's ACBJ Titles and other publications and would purchase reprints or plaques featuring content owned by ACBJ and the ACBJ Marks—but are specifically targeted because of those customers' relationship to ACBJ and the ACBJ Titles. As such, ACBJ and Defendants compete for a common pool of customers.

100.    Defendants' goods and services offered under the Infringing Marks are overlapping and/or closely related to ACBJ's goods and services rendered under its ACBJ Marks.

29

101. Defendants' use of the Infringing Marks so resembles ACBJ's ACBJ Marks as to be likely, when used on or in connection with the services identified above, to cause confusion, or to cause mistake, or to deceive.

102. Defendants' use of identical marks for goods and services that are identical or closely related to ACBJ's goods and services offered under its ACBJ Marks is without authority or license from ACBJ and creates a likelihood of confusion, deception, and mistake.

103. Defendants' use of the Infringing Marks in interstate commerce to advertise, promote, and sell their goods and services, including through their email solicitations and the Infringing Website, was never approved, permitted or endorsed by ACBJ, and occurred after ACBJ had established extensive and valuable goodwill in connection with its goods and services identified by the ACBJ Marks.

104. Defendants' use of the Infringing Marks and Infringing Content in interstate commerce and commerce affecting interstate commerce was and continues to be without ACBJ's consent, and began long after ACBJ had established extensive and valuable goodwill in connection with its goods and services identified by the ACBJ Marks.

105. ACBJ's first use in commerce of the ACBJ Marks predate Defendants' first use of the Infringing Marks and, therefore, ACBJ has priority over Defendants' first use of the Infringing Marks.

30

106. ACBJ's customers, Defendants' customers, and the general public are likely to be misled—and have actually been misled—into believing that Defendants' goods and services provided under the Infringing Marks are provided, sponsored, or approved by ACBJ.

107. Defendants have infringed ACBJ's ACBJ Marks and copyrighted content by various acts, including, without limitation, the advertising, promotion, and provision of commemorative plaques under the Infringing Marks and featuring the Infringing Content.

108. Because Defendants' use of the Infringing Marks in interstate commerce and commerce affecting interstate commerce was and continues to be without ACBJ's consent, ACBJ does not control the quality (or lack thereof) of Defendants' goods and services.

109. Due to Defendants' use of the Infringing Marks to advertise, promote, and sell goods and services of a lesser or unapproved quality than ACBJ's high quality plaque products and services, upon information and belief, the public is likely to associate the lack of quality or lack of prestige in Defendants' goods and services with ACBJ's goods and services.

110. Defendants' use of the Infringing Marks and Infringing Content in connection with Defendants' goods and services has been made notwithstanding ACBJ's well-known and prior established rights in the ACBJ Marks and content and

31

with both actual and constructive notice of ACBJ's Registered Marks under 15 U.S.C. § 1072.

111. Defendants' continued use of the Infringing Marks and Infringing Content constitutes malicious, willful, fraudulent, and deliberate infringement.

112. In selecting and using the ACBJ Marks in connection with the sale and offering of its goods and services, notwithstanding its actual knowledge of ACBJ's rights, Defendants have acted and continue to act with wanton disregard for ACBJ's rights, and with the willful intent and purpose of improperly taking or benefiting from the favorable reputation and valuable goodwill which ACBJ has established in the ACBJ Marks.

113. Defendants' actions have caused and continue to cause Defendants' goods and services to be passed off as made, authorized, sponsored, or endorsed by or otherwise connected or associated with ACBJ and/or the ACBJ Titles.

114. The Infringing Marks utilized by Defendants are a colorable imitation of and confusingly similar to the ACBJ Marks.

115. Defendants' activities are likely to cause confusion, to cause mistake, and to deceive consumers and others as to the source, nature, and quality of the goods and services offered by Defendants.

116. Defendants' wrongful and illegal activities are likely to cause confusion, and to cause mistake, and to deceive consumers and others as to the

32

origin, sponsorship, or approval of the goods and services offered by Defendants with or by ACBJ.

117. Defendants' infringing activities have caused and, unless enjoined by this Court, will continue to cause, irreparable injury and other damage to ACBJ's business, reputation, and good will of an insidious and continuing sort that cannot be adequately calculated or compensated in money damages. ACBJ has no adequate remedy at law.

## CAUSES OF ACTION

### COUNT I
### FEDERAL TRADEMARK INFRINGEMENT
### UNDER LANHAM ACT § 32(1)

118. ACBJ hereby realleges and incorporates by reference the allegations of paragraphs 1 to 117 of this Complaint as if fully set forth herein.

119. ACBJ is the owner of valid Registered Marks, as described above.

120. Defendants have used in commerce a reproduction, counterfeit, copy, or colorable imitation of one or more of ACBJ's Registered Marks in connection with the sale, offering for sale, distribution, or advertising of Defendants' goods or services on or in connection with which such use is likely to cause confusion, to cause mistake, or to deceive.

33

121. Defendants' Infringing Marks are spurious marks that are identical with, or substantially indistinguishable from, one or more of ACBJ's Registered Marks.

122. Defendants' use of ACBJ's Registered Marks and colorable imitations thereof in connection with the advertising and provision of its goods and services in commerce is likely to cause confusion, or to cause mistake, or to deceive, in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

123. Defendants' acts of infringement have caused ACBJ damages, and ACBJ seeks judgment pursuant to 15 U.S.C. § 1117 for Defendants' profits made by Defendants' unauthorized and infringing use of the Registered Marks, for the damages sustained by ACBJ, for statutory damages (at ACBJ's election), for all costs necessary to remediate the infringing uses and their effects, and for the costs, expenses, and reasonable attorneys' fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

124. ACBJ seeks an award of punitive and/or treble damages for at least three times the amount of Defendants' profits or ACBJ's damages, whichever is greater, due to the nature of Defendants' willful conduct.

125. Pursuant to 15 U.S.C. § 1116 and equity, ACBJ is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal infringing conduct.

34

126.   Pursuant to 15 U.S.C. § 1118 and equity, ACBJ is entitled to impoundment and destruction of infringing articles.

## COUNT II
## FEDERAL UNFAIR COMPETITION
## UNDER LANHAM ACT § 43(a)

127.   ACBJ hereby realleges and incorporates by reference the allegations of paragraphs 1 to 117 of this Complaint as if fully set forth herein.

128.   ACBJ owns valid registered and common law trademark rights in the ACBJ Marks.

129.   Defendants' use of the Infringing Marks is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with ACBJ, and as to the origin, sponsorship or approval of Defendants' goods and services by ACBJ. Additionally, the public is likely to believe that Defendants' goods and services are provided by, or sponsored by, or approved by, or licensed by, or affiliated with, or in some other way legitimately connected with ACBJ, all to ACBJ's irreparable harm and in violation of 15 U.S.C. § 1125(a).

130.   Defendants have used names and marks which are confusingly similar to ACBJ's ACBJ Marks with the intent to deceive the public into believing that goods and services offered or sold by Defendants are made by, approved by, sponsored by, or affiliated with ACBJ.

35

131.   Defendants' acts as alleged herein were committed with the intent to pass off Defendants' goods and services as the goods and services of, approved by, sponsored by, or affiliated with ACBJ, and with the intent to deceive and defraud the public.

132.   Defendants are knowingly infringing the ACBJ Marks in violation of the trademark rights of ACBJ.

133.   Defendants' acts of unfair competition have caused ACBJ damages, and ACBJ seeks judgment pursuant to 15 U.S.C. § 1117 for Defendants' profits made by Defendants' unfair competition and passing off of ACBJ's goods and services, for the damages sustained by ACBJ, for all costs necessary to remediate the unfair competition and passing off and their effects, and for the costs, expenses, and reasonable attorneys' fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

134.   ACBJ further seeks judgment for three times the amount of Defendants' profits or ACBJ damages, whichever is greater, due to the nature of Defendants' willful conduct.

135.   Pursuant to 15 U.S.C. § 1116 and equity, ACBJ is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal infringing conduct.

36

136. Pursuant to 15 U.S.C. § 1118 and equity, ACBJ is entitled to impoundment and destruction of infringing articles.

## COUNT III
## FALSE ASSOCIATION AND FALSE DESIGNATION OF ORIGIN
## UNDER LANHAM ACT § 43(a)

137. ACBJ hereby realleges and incorporates by reference the allegations of paragraphs 1 to 117 of this Complaint as if fully set forth herein.

138. Defendants have caused products and services to enter interstate commerce with the designation and ACBJ Marks connected therewith.

139. Defendants' use of said designation and other representations constitute a false association and false designation of origin which is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with ACBJ and as to the origin, sponsorship, or approval of such goods and services by ACBJ.

140. Defendants' acts are in violation of 15 U.S.C. § 1125 in that Defendants have used in connection with its goods and services a false association, a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with ACBJ and as to the origin, sponsorship, and approval of Defendants' goods, services, and commercial activities.

141. Defendants' acts constitute false association and false designation of origin, and have caused ACBJ damages, including, without limitation, lost profits, harm to reputation, and costs to remediate the confusion and harm to ACBJ's goodwill and reputation caused by Defendants.

142. Defendants' acts have caused ACBJ damages, and ACBJ seeks judgment pursuant to 15 U.S.C. § 1117 for Defendants' profits made by Defendants' unfair competition and passing off of Defendants' goods and services, for the damages sustained by ACBJ, for all costs necessary to remediate the unlawful acts and their effects, and for the costs, expenses, and reasonable attorneys' fees (as this is an exceptional case) incurred in bringing the present action.

143. ACBJ further seeks judgment for three times the amount of Defendants' profits or ACBJ's damages, whichever is greater, due to the nature of Defendants' willful conduct.

144. Pursuant to 15 U.S.C. § 1116 and equity, ACBJ is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal infringing conduct.

145. Pursuant to 15 U.S.C. § 1118 and equity, ACBJ is entitled to impoundment and destruction of infringing articles.

## COUNT IV
## FALSE ADVERTISING UNDER LANHAM ACT § 43(a)

146. ACBJ hereby realleges and incorporates by reference the allegations of paragraphs 1 to 117 of this Complaint as if fully set forth herein.

147. Defendants' advertising and promotion of their goods and services falsely state that TGN is an "Official partner" of ACBJ's ACBJ Titles, or similar misrepresentations of like meaning and effect, and is likely to deceive consumers into mistakenly believing that Defendants' goods and services are approved by, sponsored by, or affiliated with ACBJ.

148. Defendants' advertisements and statements are false and misleading. TGN is not ACBJ's "official partner"—and has no license or authority—to produce and sell reprints, plaques, or any other product bearing the ACBJ Marks or ACBJ's copyrightable content.

149. Defendants' false and misleading advertisements and statements have deceived, or have the capacity to deceive, consumers.

150. Defendants' false and misleading advertisements and statements have a material effect on consumer purchasing decisions.

151. Defendants' goods and services advertised through such false and misleading statements affect interstate commerce.

152. ACBJ has been and will continue to be injured as a result of Defendants' acts of false advertising.

39

153. ACBJ has been irreparably harmed and will continue to be irreparably harmed unless Defendants are enjoined from misrepresenting that it is authorized to produce and sell reprints, plaques, or any other product bearing the ACBJ Marks or ACBJ's copyrightable content.

154. Defendants' acts have caused ACBJ damages, and ACBJ seeks judgment pursuant to 15 U.S.C. § 1117 for Defendants' profits made by Defendants' acts of false and misleading advertising, for the damages sustained by ACBJ, for all costs necessary to remediate the unlawful acts and their effects, and for the costs, expenses, and reasonable attorneys' fees (as this is an exceptional case) incurred in bringing the present action.

155. ACBJ further seeks judgment for three times the amount of Defendants' profits or ACBJ's damages, whichever is greater, due to the nature of Defendants' willful conduct.

156. Pursuant to 15 U.S.C. § 1116 and equity, ACBJ is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal infringing conduct.

157. Pursuant to 15 U.S.C. § 1118 and equity, ACBJ is entitled to impoundment and destruction of infringing articles.

## COUNT V
## DILUTION UNDER LANHAM ACT § 43(c)

158.   ACBJ hereby realleges and incorporates by reference the allegations of paragraphs 1 to 117 of this Complaint as if fully set forth herein.

159.   The ACBJ Marks are distinctive and famous marks within the meaning of 15 U.S.C. § 1125(c) by virtue of their inherent and/or acquired distinctiveness; the long duration and wide extent of the Defendants' use; the long duration, wide extent, and wide geographic reach of advertising and publicity of the ACBJ Marks; the large volume and wide geographic extent of sales of goods and services offered under the ACBJ Marks; the high degree of actual recognition of the ACBJ Marks; and the longstanding federal registrations of the ACBJ Marks.

160.   Defendants' use of ACBJ's ACBJ Marks, or variants thereof similar to or likely to cause confusion with the ACBJ Marks, has been used in commerce for Defendants' commercial gain.

161.   Even if the Court finds Defendants' use of the Infringing Marks is not likely to cause confusion with ACBJ's ACBJ Marks, Defendants have engaged in dilution by blurring because Defendants' use of the ACBJ Marks, or variants thereof similar to or likely to cause confusion with the ACBJ Marks, has already caused or is likely to cause an association arising from the similarity between Defendants' Infringing Marks and ACBJ's ACBJ Marks that impairs the actual or acquired distinctiveness of ACBJ's ACBJ Marks.

41

162. Defendants have engaged in dilution by tarnishment because Defendants' use of the ACBJ Marks, or variants thereof similar to or likely to cause confusion with the ACBJ Marks, has already caused or is likely to cause an association arising from the similarity between Defendants' infringing use and ACBJ's ACBJ Marks that harms the reputation and goodwill associated with ACBJ's ACBJ Marks.

163. Defendants adopted the Infringing Marks well after the ACBJ Marks became famous.

164. The Infringing Marks are identical to the ACBJ Marks.

165. Defendants use the Infringing Marks in commerce. Such use is commercial in nature.

166. Defendants' use of the Infringing Marks in connection with its goods and services has caused, or is likely to cause, dilution of ACBJ's ACBJ Marks. It is likely that the ordinary consuming public of the U.S. will make an association arising from the similarity of the marks that impairs the distinctiveness of the ACBJ Marks.

167. Defendants' use of the ACBJ Marks constitutes dilution under 15 U.S.C. § 1125(c), and ACBJ is entitled to an injunction prohibiting such further use.

168. Defendants' acts have caused ACBJ damages, and ACBJ seeks judgment pursuant to 15 U.S.C. § 1117 for Defendants' profits made by Defendants through their unlawful acts, for the damages sustained by ACBJ, and for all costs

42

necessary to remediate the unlawful acts and their effects, pursuant to 15 U.S.C. §§ 1116 and 1117.

169. Defendants willfully intended to trade on the recognition of ACBJ's famous mark, entitling ACBJ to treble its damages and Defendants' profits, increased subject to the principles of equity pursuant to the provisions of 15 U.S.C. § 1117.

170. Defendants' willful conduct renders this case exceptional, entitling ACBJ to an award of its costs, expenses, and reasonable attorneys' fees incurred in bringing the present action and prior attempts to remedy Defendants' actions pursuant to 15 U.S.C. § 1117.

171. Pursuant to 15 U.S.C. § 1118, ACBJ is entitled to impoundment and destruction of infringing articles.

## COUNT VI
## FLORIDA STATUTORY TRADEMARK INFRINGEMENT

172. ACBJ hereby realleges and incorporates by reference the allegations of paragraphs 1 to 117 of this Complaint as if fully set forth herein.

173. ACBJ is the owner of valid Florida Registrations, as described above.

174. Defendants have used in commerce a reproduction, counterfeit, copy, or colorable imitation of one or more of ACBJ's ACBJ Marks subject to the Florida Registrations in connection with the sale, offering for sale, distribution, or

43

advertising of Defendants' goods or services on or in connection with which such use is likely to cause confusion, to cause mistake, or to deceive.

175. Defendants have reproduced, counterfeited, copied, or colorably imitated one or more of ACBJ's ACBJ Marks subject to the Florida Registrations and applied such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used upon or in connection with the sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, to cause mistake, or to deceive.

176. Defendants' Infringing Marks are spurious marks that are identical with, or substantially indistinguishable from, one or more of the ACBJ Marks subject to the Florida Registrations.

177. Defendants' use of one or more of the ACBJ Marks subject to the Florida Registrations and colorable imitations thereof in connection with the advertising and provision of its goods and services in commerce is likely to cause confusion, or to cause mistake, or to deceive, in violation of Fla. Stat. § 495.131.

178. Defendants' acts of infringement have caused ACBJ damages, and ACBJ seeks judgment pursuant to Fla. Stat. § 495.141, for Defendants' profits made by Defendants' unauthorized and infringing use of ACBJ Marks subject to the Florida Registrations, for the damages sustained by ACBJ, for all costs necessary to

44

remediate the infringing uses and their effects, and for the costs, expenses, and reasonable attorneys' fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

179. Defendants have acted with the knowledge of ACBJ's ACBJ Marks, and with the intent to cause confusion or mistake or to deceive, and/or trade on ACBJ's reputation and goodwill.

180. ACBJ seeks an award of punitive and/or treble damages for at least three times the amount of Defendants' profits or ACBJ's damages, whichever is greater, due to the nature of Defendants' willful conduct.

181. Pursuant to Fla. Stat. § 495.141 and equity, ACBJ is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal infringing conduct.

182. Pursuant to Fla. Stat. § 495.141 and equity, ACBJ is entitled to impoundment and destruction of infringing articles.

## COUNT VII
## FLORIDA COMMON LAW TRADEMARK INFRINGEMENT

183. ACBJ hereby realleges and incorporates by reference the allegations of paragraphs 1 to 117 of this Complaint as if fully set forth herein.

184. ACBJ first adopted and used the ACBJ Marks as a means of establishing goodwill and reputation and to describe, identify or denominate

45

particular goods and services rendered or offered by it and to distinguish them from similar goods and services rendered or offered by others.

185. The ACBJ Marks are valid and protectable marks by virtue of its association with such goods and services and ACBJ's state and federal registrations.

186. Defendants have commenced the use of an identical or confusingly similar mark to indicate or identify closely related services.

187. As a result, use of Defendants' Infringing Marks at the same time as ACBJ's ACBJ Marks is likely to cause consumer confusion as to the source or as to the sponsorship of the services or goods offered or to be offered.

188. Defendants' use of ACBJ's ACBJ Marks is without the consent of ACBJ.

189. Defendants have acted with the knowledge of ACBJ's ACBJ Marks, and with the intent to cause confusion and/or trade on ACBJ's reputation and goodwill.

190. Defendants' use of the Infringing Marks in connection with its goods and services, as described above, constitutes infringement of ACBJ's rights in its ACBJ Marks pursuant to the common law of the State of Florida, for which infringement ACBJ is entitled to all remedies available to it under the common law of the State of Florida.

## COUNT VIII
## FLORIDA TRADEMARK AND SERVICE MARK DILUTION

191.   ACBJ hereby realleges and incorporates by reference the allegations of paragraphs 1 to 117 of this Complaint as if fully set forth herein.

192.   The ACBJ Marks are distinctive and famous marks in the State of Florida within the meaning of Fla. Stat. § 495.151 by virtue of the high degree of inherent and acquired distinctiveness of the ACBJ Marks in this State; the long duration and wide extent of use of the ACBJ Marks in connection with the goods and services with which the ACBJ Marks are used; the long duration and wide extent of advertising and publicity of the ACBJ Marks in this State; the wide geographic extent of the trading area in which the ACBJ Marks is used; the high degree of recognition of the ACBJ Marks in this State in ACBJ and Defendants' channels of trade; and the longstanding federal registrations of the ACBJ Marks.

193.   ACBJ has used its ACBJ Marks extensively throughout this State and this District for over more than forty years, and for some ACJB Marks, at least as early as May 1963.

194.   Defendants' use of ACBJ's ACBJ Marks, or variants thereof similar to or likely to cause confusion with the ACBJ Marks, has been used in commerce for Defendants' commercial gain.

195.   Even if the Court finds Defendants' use of the Infringing Marks is not likely to cause confusion with ACBJ's ACBJ Marks, Defendants have engaged in

47

dilution by blurring because Defendants' use of the ACBJ Marks, or variants thereof similar to or likely to cause confusion with the ACBJ Marks, has already caused or is likely to cause an association arising from the similarity between Defendants' Infringing Marks and ACBJ's ACBJ Marks that impairs the actual or acquired distinctiveness of ACBJ's ACBJ Marks.

196.    Defendants have engaged in dilution by tarnishment because Defendants' use of the ACBJ Marks, or variants thereof similar to or likely to cause confusion with the ACBJ Marks, has already caused or is likely to cause an association arising from the similarity between Defendants' infringing use and ACBJ's ACBJ Marks that harms the reputation and goodwill associated with ACBJ's ACBJ Marks.

197.    Defendants adopted the Infringing Marks well after the ACBJ Marks became famous.

198.    The Infringing Marks are identical to the ACBJ Marks.

199.    Defendants use the Infringing Marks in commerce.    Such use is commercial in nature.

200.    Defendants' use of the Infringing Marks in connection with their goods and services has caused, or is likely to cause, dilution of ACBJ's ACBJ Marks. It is likely that the ordinary consuming public in Florida and the Tampa area will make

48

an association arising from the similarity of the marks that impairs the distinctiveness of the ACBJ Marks.

201. Defendants willfully intended to trade on the recognition of ACBJ and its famous ACBJ Marks.

202. Defendants' acts have caused ACBJ damages, and ACBJ is entitled to injunctive relief and all other available statutory remedies under Fla. Stat. § 495.151, including, without limitation: Defendants' profits made by Defendants through their unlawful acts; damages sustained by ACBJ; for all costs necessary to remediate the unlawful acts and their effects; and for the costs, expenses, and attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

203. ACBJ further seeks judgment for three times the amount of Defendants' profits or ACBJ's damages, whichever is greater, due to the nature of Defendants' conduct pursuant to Fla. Stat. §§ 495.151(2) and 495.141.

204. Pursuant to Fla. Stat. § 495.151(2) and equity, ACBJ is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal conduct.

205. Pursuant to Fla. Stat. §§ 495.151(2) and 495.141(1), ACBJ is entitled to impoundment and destruction of infringing articles.

## COUNT IX
## VIOLATION OF FLORIDA DECEPTIVE
## AND UNFAIR TRADE PRACTICES ACT

206.   ACBJ hereby realleges and incorporates by reference the allegations of paragraphs 1 to 117 and Counts I to VIII of this Complaint as if fully set forth herein.

207.   As alleged herein, Defendants' violations of the Lanham Act and Florida state and common law, including trademark infringement, unfair competition, false association and false designation of origin, and dilution, constitute unfair methods of competition and unfair acts or practices in the conduct of trade or commerce, in violation of Fla. Stat. § 501.204, entitling ACBJ to all remedies available, including damages and reasonable attorneys' fees and costs.

208.   Defendants' violations of the Lanham Act and Florida state and common law, including trademark infringement, unfair competition, false association and false designation of origin, false advertising, and dilution, were known by Defendants to be deceptive and misleading, or through the exercise of reasonable care or investigation could or might have been ascertained to be deceptive and misleading.

209.   Defendants' deceptive and unfair trade practices were conducted with the intent to induce others to rely upon such deceptive and unfair acts and act on them.

210. Defendants' deceptive and unfair trade practices were conducted for the purpose of selling or disposing of personal property or services, including, without limitation, plaques incorporating ACBJ Marks and ACBJ content, or to induce the public to enter into obligations relating to such property or services.

211. Defendants' conduct has misled the consuming public concerning the nature, characteristics, and quality of Defendants' goods and services, to the consuming public's detriment and the detriment of ACBJ's legitimate business enterprise.

212. Such deceptive and unfair acts offend public policy and are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

213. Defendants' actions violate standards of unfairness and deception as set forth and interpreted by federal courts and/or violate 15 U.S.C. §§ 1114, 1125(a) and 1125(c), and Fla. Stat. § 495.151, all of which proscribe unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices.

214. By these actions, Defendants have engaged and continue to engage in unfair or deceptive acts and practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* As a result, ACBJ has suffered, and will continue to suffer, damage to its business, reputation, and goodwill.

215. ACBJ has suffered actual damages as a direct and proximate result of Defendants' wrongful, deceptive and unfair trade practices.

216. Defendants' deceptive and unfair trade practices are causing and will continue to cause ACBJ to suffer irreparable harm, for which ACBJ has no adequate remedy at law.

217. ACBJ is entitled to injunctive relief and all other available statutory remedies, including, but not limited to, ACBJ's damages; Defendants' profits; and attorney fees and costs pursuant to Fla. Stat. §§ 501.2105 and 501.211.

218. Further, ACBJ is entitled to injunctive relief against Defendants to stop the illegal conduct.

**COUNT X**
**FLORIDA UNFAIR COMPETITION**

219. ACBJ hereby realleges and incorporates by reference the allegations of paragraphs 1 to 117 and Counts I to IX of this Complaint as if fully set forth herein.

220. As alleged herein, Defendants have engaged in deceptive or fraudulent conduct, which is likely to cause, if it has not already, customer confusion in violation of Florida common law.

221. Defendants' actions, as described above, constitute unfair competition under the common law of the State of Florida, in that Defendants' actions constitute federal trademark infringement under the Lanham Act, false association, false designation of origin, and unfair competition and passing off under the Lanham Act, false advertising under the Lanham Act, dilution under the Lanham Act, dilution

under Florida statutory law, Florida state and common law trademark infringement and violation of the Florida Deceptive and Unfair Trade Practices Act, entitling ACBJ to all remedies available under Florida law for such unfair competition.

222. Defendants' actions are likely to cause consumers to believe that Defendants' goods and services originate from the same source as, or are sponsored or approved by ACBJ, or that there is an association, affiliation, or connection between Defendants and ACBJ.

223. Through Defendants' unauthorized use of the ACBJ Marks in connection with Defendants' goods and services in commerce, Defendants have committed trademark infringement, passing off, palming off, imitating, and/or unfair or deceptive practices that are causing or are likely to cause confusion or deception.

224. Defendants have used in connection with their goods and services a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with ACBJ, and to deceive as to the source, sponsorship, approval, or certification of Defendants' goods or services by ACBJ.

225. Defendants' acts as alleged herein were committed with the intent to deceive and defraud the public in order to gain an increase in its sales, customer base, and share in the commemorative plaque and reprint industry.

226.    Defendants are liable to ACBJ for unfair competition under Florida law, because Defendants' conduct is tortious and has deprived ACBJ of customers and other prospects.

227.    Defendants' acts as alleged herein constitute unfair, deceptive, or misleading acts in violation of Florida law. Defendants' acts of unfair competition have caused ACBJ damages, and ACBJ seeks judgment for Defendants' profits made by Defendants' unfair competition, for the damages sustained by ACBJ, for all costs necessary to remediate the unfair competition and their effects, and for the costs incurred in bringing the present action and prior attempts to remedy Defendants' actions.

228.    ACBJ further seeks judgment for punitive damages of at least three times the amount of Defendants' profits or ACBJ's damages, whichever is greater, due to the nature of Defendants' conduct.

229.    Further, ACBJ is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal conduct.

**COUNT XI**
**REMOVAL OF COPYRIGHT INFORMATION**
**UNDER 17 U.S.C. § 1202(b)**

230.    ACBJ hereby realleges and incorporates by reference the allegations of paragraphs 1 to 117 of this Complaint as if fully set forth herein.

54

231. The ACBJ Website and print versions of the ACBJ Titles contain conspicuous copyright management information, which is conveyed in connection with such work and protected under 17 U.S.C.§ 1202(b).

232. In the process of unlawfully copying, reproducing, distributing, adapting, and/or publicly displaying advertisements and products incorporating content owned by ACBJ, and without the consent, permission, or authority of ACBJ, Defendants intentionally removed ACBJ's copyright management information from articles and content taken from the ACBJ Website or print ACBJ Titles and reproduced, modified, or digitally manipulated by Defendants to create their plaque previews and products.

233. On information and belief, Defendants copied, displayed, and/or distributed portions of ACBJ's content contained on the ACBJ Website or print ACBJ Titles, with the intent and knowledge that copyright management information had been intentionally removed therefrom.

234. On information and belief, Defendants intentionally removed ACBJ copyright management information and copied, displayed, and/or distributed portions of the ACBJ's content contained on the ACBJ Website or print ACBJ Titles with the knowledge that doing so would induce, enable, facilitate, or conceal an infringement of ACBJ's rights under the Copyright Act.

55

235. Defendants engaged in these activities without the consent or authorization of ACBJ.

236. ACBJ has been injured as a result of this violation of 17 U.S.C. § 1202(b) and is entitled to injunctive relief, damages, costs, and attorneys' fees. ACBJ may also elect to recover statutory damages pursuant to 17 U.S.C. § 1203(c)(3) of up to $25,000 for each violation of 17 U.S.C. § 1202(b).

## COUNT XII
## BREACH OF CONTRACT—USER AGREEMENT

237. ACBJ hereby realleges and incorporates by reference the allegations of paragraphs 1 to 117 of this Complaint as if fully set forth herein.

238. By using the ACBJ Website and subscribing to ACBJ publications, Defendants entered into and are bound by the ACBJ Website User Agreement, pursuant to which Defendants obtained access to ACBJ publications.

239. Defendants had actual or constructive knowledge of the ACBJ Website's User Agreement terms prior to using the site.

240. On information and belief, employees of Defendants, acting within the scope of their employment, entered into multiple subscriptions with ACBJ and thus agreed to the ACBJ Website User Agreement, in order to obtain access to ACBJ publications for Defendants, and pursuant to which Defendants did in fact obtain access to ACBJ publications.

56

241. Defendants' acts described above violate and materially breach Defendants' subscription agreements with ACBJ and the ACBJ Website User Agreement.

242. As a direct and proximate result of Defendants' violations and breaches, ACBJ has been substantially harmed in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, ACBJ respectfully demands a jury trial, and prays for the following relief against Defendants:

1. That the Court enter a judgment in favor of ACBJ and against Defendants as to all causes of action alleged herein.

2. That Defendants and their officers, directors, agents, servants, employees, and all persons in active concert and participation with them, be permanently enjoined from directly or indirectly using ACBJ's ACBJ content, ACBJ Marks, or any other mark that is similar in appearance to ACBJ's ACBJ Marks as part of any trademark, service mark, trade name, corporate name, or assumed name; or on the Internet in any domain name, title, description, keyword, source code, tag, banner, link, and any other use for the purpose of directing Internet traffic; or in social media; or in any other manner in connection with business, products, or services within the U.S.

3.      That Defendants be ordered to deliver up for destruction all products, literature, signs, labels, tags, prints, packages, wrappers, containers, fabrics, advertising materials, stationery, and any other items in Defendants' possession or control that bear ACBJ's content, ACBJ Marks, or any other mark that is similar to ACBJ's ACBJ Marks, and that Defendants be ordered to deliver up for destruction all plates, molds, matrices, masters, and other means of producing or applying the prohibited content or marks.

4.      That Defendants be ordered to file with the Court and serve on ACBJ, within 30 days after the entry of an injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

5.      That Defendants be required to pay and account to ACBJ for any and all benefits or profits derived by Defendants from the use of ACBJ's ACBJ Marks and any name or mark incorporating any mark, word, designation, name, or domain name that is confusingly similar to the ACBJ Marks, including the sale of any and all products or services associated with any such name or mark, and for all damages sustained by ACBJ by reason of said acts of unfair competition, false designation of origin, and/or other illegal acts complained of herein to the full extent permitted by 15 U.S.C. §§ 1117 and 1125, and Florida statutory and common law.

6. That ACBJ be awarded statutory damages under 15 U.S.C. § 1117(c) and 15 U.S.C. § 1117(d), should ACBJ so elect.

7. That, in accordance with the Lanham Act and Florida statutory and common law, ACBJ be awarded punitive and/or treble damages in an amount no less than three times the amount of Defendants' profits or ACBJ's damages, whichever is greater, increased subject to the principles of equity, due to the wanton, egregious, willful, deliberate, intentional, and/or malicious nature of its actions.

8. That Defendants be required to pay and account to ACBJ for any and all benefits or profits derived by Defendants from the removal or alteration of ACBJ's copyright management information, including the sale of any and all products or services associated with ACBJ content, and for all damages sustained by ACBJ by reason of said acts complained of herein to the full extent permitted by 17 U.S.C. §§ 1202 and 1203.

9. That ACBJ be awarded statutory damages under 17 U.S.C. § 1203(b) and (c)(3), should ACBJ so elect.

10. That ACBJ be awarded compensatory damages for Defendants' breaches of contract in an amount to be determined, together with reasonable attorney fees.

11. That the costs of this action be awarded to ACBJ.

12.     That ACBJ be awarded its reasonable attorney fees due to the exceptional nature of this case and Defendants' intentional, wanton and willful illegal conduct.

13.     That Defendants be liable for any award of monetary damages, treble damages, punitive damages, costs, and/or attorney fees.

14.     That pre-judgment and post-judgment interest be awarded to ACBJ. That ACBJ have such other and further relief, including without limitation equitable relief, as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

ACBJ demands a trial by jury.

Dated:  February 7, 2023                    Respectfully submitted,

                                            ADAMS AND REESE LLP

                                            /s/ Eric J. Partlow
                                            Eric J. Partlow
                                            Florida Bar No. 556531
                                            Primary: eric.partlow@arlaw.com
                                            Secondary: ann.jones@arlaw.com

                                            100 North Tampa Street, Suite 4000
                                            Tampa, FL  33602
                                            (813) 402-2880 (Telephone)
                                            (813) 402-2887 (Facsimile)
                                            Attorney for Plaintiff

                                            Maia T. Woodhouse
                                            TN BPR No. 30438 (*motion for pro hac vice admission forthcoming*)
                                            Primary: maia.woodhouse@arlaw.com
                                            Secondary: caitlin.smith@arlaw.com

                                            1600 West End Avenue, Suite 1400
                                            Nashville, Tennessee 37203
                                            (615) 259-1085 (Telephone)

                                            *Attorneys for Plaintiff*

61